IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01349-PAB

JILL A. SCHOOLAR,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE**
_____

This matter comes before the Court on plaintiff Jill Schoolar's complaint [Docket No. 3], filed on June 26, 2008. Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

In December of 2005, Ms. Schoolar filed for disability benefits and supplemental benefits under the Act. R. at 59-70. She alleges that she has been disabled since April 15, 2005. *See* R. at 59-70. After Ms. Schoolar's claim was denied at the initial level, R. at 51-54, an Administrative Law Judge ("ALJ") conducted a hearing on January 30, 2007, at which plaintiff was represented by a non-attorney representative. R. at 316-43. In addition to Ms. Schoolar's testimony, the ALJ received the testimony of a Vocational

Expert ("VE"), Doris Schriver, at this hearing. On May 15, 2007, the ALJ issued a decision denying plaintiff's applications for benefits. R. at 16-27.

Plaintiff requested that the Social Security Administration's Appeals Council review the ALJ decision. R. at 11. On May 2, 2008, the Appeals Council denied that request. R. at 5-8. Therefore, the ALJ's denial stands as the Commissioner's final decision on this matter. Plaintiff filed a timely appeal with this Court, making the Commissioner's final decision reviewable. *See* 42 U.S.C. § 405(g) (2006); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the Court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court will not

"reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### B.  The ALJ Decision

In his May 15, 2007 decision, the ALJ reached step five in the sequential five-step analysis. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since April 15, 2005, her alleged onset date. R. at 18. At step two, the ALJ determined that plaintiff had the following severe impairments: gastroesophageal reflux disease (GERD), a bipolar affective disorder, a personality disorder, and a history of substance abuse. R. at 19. At step three, the ALJ concluded that Ms. Schoolar did not have an impairment or combination of impairments that met

4

or medically equaled the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. at 20.

The ALJ then turned to the task of determining plaintiff's RFC and found that Ms. Schoolar had

> the residual functional capacity to lift 50 pounds occasionally and 25 pounds frequently; and stand, walk, and/or sit up to 6 hours each during the course of an 8 hour day, with normal breaks. In deference to her mental impairments, she is restricted to simple work which has a [General Educational Development or] GED level of no more than 2 in reasoning, 2 in math, and 2 in language. In addition she should be in a position which does not have frequent or prolonged contact with supervisors and coworkers, no contact with the general public, and which entails only low stress activities.

R. at 21. In applying this RFC at step four, the ALJ found that the plaintiff was not able to perform her past relevant work. R. at 25. At step five, based on the VE's testimony, the ALJ found that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the plaintiff could perform, including office helper, office clerk, and retail marker. R. at 26. Based on his step-five findings, the ALJ concluded that Ms. Schoolar had not been under a disability, as it is defined under the Act, from the alleged onset date of April 15, 2005 through May 15, 2007, the date the ALJ issued his opinion. R. at 26.

### C. Plaintiff's Objections to the ALJ's Decision

In her appeal, Ms. Schoolar objects to the ALJ's finding of no disability on four grounds: (1) the ALJ failed to give sufficient weight to the consultative examining physician's opinion; (2) the ALJ gave too much weight to the opinion of the non-examining state agency psychiatrist; (3) the ALJ failed to include in plaintiff's RFC all of the restrictions listed by the treating sources; and (4) that critical portions of the ALJ's

5

RFC finding are not supported by evidence in the record. I address each of these objections in turn below.

### 1. *Weight Given to the Consultative Examining Physician's Opinion*

After examining Ms. Schoolar, a state consultative examining psychologist, Dr. Richard Madsen Ph.D. (PC), concluded in an April 26, 2006 report that Ms. Schoolar's "ability to do work related activities is impaired." R. at 265-268. Dr. Madsen concluded that "[s]he will have difficulty maintaining a regular work schedule focusing and concentrating on work, and relating to peers, co-workers, supervisors and the general public." R. at 268. The ALJ, in discussing Dr. Madsen's opinions, noted that "there is little in the way of objective findings in this examination which would support these limitations" and that Ms. Schoolar "had an essentially normal mental status examination and any limitations appear to be based on the claimant's self-reports." R. at 24.

Ms. Schoolar argues that the ALJ erred in his treatment of Dr. Madsen's opinions. First, she claims that the ALJ erred by failing to expressly state what weight he gave to Dr. Madsen's opinions. Pl.'s Opening Br. [Docket No. 12] ("Pl.'s Br.") at 19 (all references are to internal pagination). Second, Ms. Schoolar argues that although Social Security regulations require an ALJ to consider a series of factors in determining the weight given to an examining medical source opinion, the ALJ's opinion in this case failed to expressly address those factors. Pl.'s Br. at 23-25.

Ms. Schoolar is correct that the ALJ did not specifically state that he gave Dr. Madsen's opinions great weight, no weight, or something in between. However, such an explicit synopsis is unnecessary in this case. Despite his broad sounding appraisal of Dr. Madsen's opinions – "there is little in the way of objective findings in this

6

examination which would support these limitations" – the ALJ clearly did not reject the entirety of Dr. Madsen's conclusions. In fact, one can easily determine which opinions the ALJ accepted and which he did not. For example, the ALJ incorporated into the RFC Dr. Madsen's finding that Ms. Schoolar would have difficulty relating to peers, co-workers, supervisors, and the general public. The ALJ also did not take issue with Dr. Madsen's assessments of Ms. Schoolar's behavior and affect, her thought processes, the level of her persistence and pace, or her Global Assessment of Functioning or "GAF" score. *See* R. at 23-24.

At the same time, the ALJ did not adopt wholesale the opinions offered by Dr. Madsen. For example, while Dr. Madsen opined that Ms. Schoolar's mathematical computation, intellectual functioning, and abstract reasoning were average, R. at 267, the ALJ concluded that Ms. Schoolar would be restricted to simple work which has a GED level that is below average in reasoning, math, and language. *See* R. at 21. However, this does not appear to be an outright rejection of Dr. Madsen's opinion but rather an acknowledgment of the reports by Dr. Madsen and elsewhere in the record that Ms. Schoolar may have trouble focusing and concentrating on work as well as some limit on her mental functioning. *See, e.g.*, R. at 268, 279, 283.

The one conclusion of Dr. Madsen that it appears the ALJ did reject is the assertion that Ms. Schoolar would have difficulty maintaining a regular work schedule. As the ALJ explained, this limitation appears to find its source in Ms. Schoolar's self-reporting to Dr. Madsen. "[F]inding a physician's opinion is based on his patient's subjective complaints must be rooted in evidence taken from the record." *Cook v. Astrue*, 554 F. Supp. 2d 1241, 1247 (D. Kan. 2008) (citing *Victory v. Barnhart*, 121 F.

7

App'x 819 (10th Cir. 2005) and *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004)).

Here, the only evidence in Dr. Madsen's report that pertains to Ms. Schoolar's ability to maintain a regular work schedule is the discussion of her reported depressive states. Dr. Madsen recounted:

> The client states that when she is depressed she slices on self and watches TV and sleeps through the depression. She states that she gets very sad and feels hopeless. She gets depressed for two to seven days about once a month. She stays in bed most of the time for about one month. She complains that "I don't fit in to life. My life is wasting."

R. at 265. It is clear from Dr. Madsen's repeated use of qualifiers that these reports came directly from Ms. Schoolar. Without any objective evidence indicating that Ms. Schoolar would have difficulty maintaining a regular work schedule, the ALJ was justified in finding that any purported limitation in this regard was "based on the claimant's self-reports." R. at 24.

According to Social Security regulations, in deciding the weight given to any medical opinion, an ALJ is to consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); See 20 C.F.R. § 404.1527(d). As discussed above, the ALJ's RFC in the present case tracked somewhat closely with the opinions of Dr. Madsen. However, because the ALJ did not adopt Dr. Madsen's opinions in their entirety, Ms. Schoolar argues that the ALJ was

8

required to explicitly discuss the factors listed here. According to Ms. Schoolar, the ALJ's failure to do so constitutes reversible error.

Ms. Schoolar does not explain, however, how analysis of any of these factors would alter the outcome of the ALJ's decision. Little substantive benefit would attend a more formulaic approach in this case. First, factors one and two in 20 C.F.R. § 1527(d), which amount to consideration of the length, frequency, nature, and extent of the relationship between the claimant and the medical source, would not alter the analysis. There is no dispute that Dr. Madsen was a consultative examiner who reviewed Ms. Schoolar's record and met with her once. More thorough discussion of these facts by the ALJ would shed no light on Ms. Schoolar's limitations.

Second, the ALJ did address factors three and four – the degree to which the physician's opinion is supported by relevant evidence and the consistency between the opinion and the record as a whole. He noted that "there is little in the way of objective findings in this examination which would support these limitations" and that Ms. Schoolar "had an essentially normal mental status examination and any limitations appear to be based on the claimant's self-reports." R. at 24. The ALJ then proceeded to discuss the other medical evidence, eventually culminating in a paragraph in which the ALJ summarized all of the medical evidence and tied it to the RFC. *See* R. at 24.

Finally, while the ALJ did not explicitly discuss Dr. Madsen's status as a specialist, such discussion would not have impacted the analysis. The ALJ noted that Dr. Madsen conducted Ms. Schoolar's psychological evaluation and, as discussed above, deferred to Dr. Madsen on several issues regarding Ms. Schoolar's psychological condition. R. at 23-24. The ALJ's reason for rejecting Dr. Madsen's

9

proffered limitation was that it was based on self-reported symptoms rather than, say, on an inability to properly diagnose symptoms. Therefore, any failure by the ALJ to explicitly recount Dr. Madsen's status as a psychological specialist under the fifth factor has no impact and is at best harmless error. *See Schmidt v. Astrue*, No. 08-cv-01421-EWN, 2008 WL 4452110, at *15 (D. Colo. Sept. 30, 2008) (citing *Sherman v. Barnhart*, 192 F. App'x 801, 804 (10th Cir. 2006)) (concluding that ALJ's failure to consider fifth factor was inconsequential and harmless); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) ("[H]armless error analysis nevertheless may be appropriate to supply a missing dispositive finding where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." (internal quotation marks and omission marks omitted)).

### *2. Weight Given to the Non-examining State Agency Psychiatrist*

Dr. Donald Glasco was engaged to review Ms. Schoolar's medical record and opine on her limitations. Based on his review, Dr. Glasco concluded that Ms. Schoolar would be "moderately limited" in the following areas:

– The ability to understand and remember detailed instructions.

– The ability to carry out detailed instructions.

– The ability to maintain attention and concentration for extended periods.

– The ability to accept instructions and respond appropriately to criticism from supervisors.

- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

R. at 283-84. Dr. Glasco also opined that Ms. Schoolar "retains the mental ability to perform work requiring little or no judgment." R. at 285. The ALJ concluded that "[t]his opinion is well supported by and consistent with the record as a whole. Therefore, the undersigned has accorded significant weight to the State agency physician's opinion." R. at 25.

Ms. Schoolar complains that the ALJ improperly elevated the opinion of the non-examining psychiatrist, Dr. Glasco, over that of the examining psychologist, Dr. Madsen. The Social Security regulations offer guidance on how to evaluate medical opinions relative to the professional's relationship with the patient. For example,

> [g]enerally, [ALJs] give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(d)(2); *see Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Furthermore, ALJ's generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 416.927(d)(1); *see Robinson*, 366 F.3d at 1084 ("[T]he opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (noting that a consulting physician's report which "consists solely of boxes checked on the Secretary's form to indicate his conclusion . . . standing alone, unaccompanied by thorough written reports

or persuasive testimony, are not substantial evidence."). However, the rules and regulations, at times, permit an ALJ to rely more heavily on a non-examining source than on treating or examining sources:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

Social Security Ruling 96-6p, 1996 WL 374180, at *3.

In the present case, contrary to Ms. Schoolar's contention, it is not clear that the ALJ gave more weight to Dr. Glasco's opinions than to Dr. Madsen's opinions. In fact, the opinions of Dr. Glasco and Dr. Madsen parallel each other in nearly all respects, the only exception being Dr. Madsen's opinion that Ms. Schoolar would have some difficulty maintaining a regular work schedule. As discussed above, the ALJ's rejection of this limitation was due to the fact that it appeared to derive from Ms. Schoolar's own reports rather than from the objective medical evidence. Therefore, contrary to Ms. Schoolar's contention, the ALJ's endorsement of Dr. Glasco did not amount to the elevation of a non-examining physician over that of an examining physician and does not constitute reversible error.

### *3. Restrictions Listed by the Treating Sources*

Ms. Schoolar next argues that the ALJ did not properly account for the opinion of nurse practitioner Veronica Sandoval. In connection with her application for disability benefits, Ms. Schoolar's representative asked Ms. Sandoval to complete an "Ability To Do Work-Related Activities Form." *See* R. at 296. Although she had treated Ms. Schoolar since January 11, 2005, Ms. Sandoval explained that she was unable to complete the form due to a lack of clinical information and the inability to observe Ms. Schoolar in the proper setting to assess her work abilities. R. at 296. As a result, Ms. Sandoval left substantial portions of the form incomplete. R. at 298-99. The two items about which Ms. Sandoval did offer an opinion were that Ms. Schoolar was (1) moderately restricted in her ability to respond appropriately to work pressures in a usual work setting and (2) moderately restricted in her ability to respond appropriately to changes in a routine work setting. R. at 299.

In his opinion denying disability benefits to Ms. Schoolar, the ALJ stated that his determination of her "residual functional capacity is also consistent with the statement from the claimant's treating mental health source [Ms. Sandoval] . . . which indicated that the claimant would have moderate limitations in her ability to respond appropriately to work pressures in a usual work setting and moderate limitations in her ability to respond appropriately to changes in a routine work setting." R. at 25. Ms. Schoolar complains that, despite the ALJ's endorsement of Ms. Sandoval, the ALJ "did not include either of these moderate restrictions in the RFC finding." Pl.'s Br. at 19 (internal pagination). Ms. Schoolar argues that the RFC which the ALJ settled upon "does not address work pressures in the usual work setting or changes in the routine work

13

setting." Pl.'s Br. at 19.  Ms. Schoolar again is literally correct; the ALJ did not use the exact same terminology as Ms. Sandoval.  However, the ALJ accounted for these limitations by requiring that any work entail only low stress activities and consist of simple work which has a GED level of no more than 2 in reasoning, 2 in math, and 2 in language.  R. at 21.  These limitations sufficiently account for the opinions of Ms. Sandoval and, therefore, the ALJ committed no reversible error in his treatment of Ms. Sandoval's opinions.

### *4. Evidence Supporting ALJ's RFC Finding*

The final objection before the Court contests the ALJ's conclusion that Ms. Schoolar could perform work that requires "a GED level of no more than 2 in reasoning, 2 in math, and 2 in language."  R. at 21.  Ms. Schoolar argues that there is no evidence on the record which demonstrates whether she meets the definition of level 2 proficiency in reasoning, math, or language as described in the Dictionary of Occupational Titles ("DOT").  *See* Pl.'s Br. at 22.

The DOT describes someone of level 2 reasoning development as being able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations."  U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), Vol. II, Appendix C, Part III, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.  The DOT describes someone of level 2 mathematical development as being able to: "Add, subtract, multiply, and divide all units of measure.  Perform the four operations with like common and decimal fractions.  Compute ratio, rate, and percent.  Draw and interpret

bar graphs. Perform arithmetic operations involving all American monetary units." U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles, Vol. II, Appendix C, Part III. Finally, according to the DOT, someone with level 2 language development has the following abilities:

> Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes. Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs. Speaking: Speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses.

U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles, Vol. II, Appendix C, Part III.

I disagree with Ms. Schoolar's assessment that there is no evidence in the record supporting the ALJ determination of an applicable GED level. First, I note that GED levels correspond to expected development as it occurs in schools in the United States. U.S. Dep't of Labor, Employment & Training Admin., DOT, Vol. II, Appendix C, Part III. The ALJ noted that Ms. Schoolar has at least a high school education, *see* R. at 25, and there are indications in the record that she attended two years of community college, *see* R. at 246.

There is additional evidence in the record regarding Ms. Schoolar's reasoning, math, and language abilities. For example, in April 2006, Dr. Madsen assessed Ms. Schoolar's reasoning, math, and intellectual functioning as average. R. at 267. The VE's testimony confirmed that a GED at level three is considered to be average. R. at

338-39. Therefore, by setting Ms. Schoolar's GED level at two for reasoning and math, the ALJ was being cautious.

As for Ms. Schoolar's language development level, while no test was conducted to establish her passive vocabulary or rate of reading, the ALJ had the opportunity to appraise Ms. Schoolar's language skills through her presentation in this case. First, Ms. Schoolar demonstrated her writing ability by coherently completing the application for disability benefits which included various forms requiring handwritten responses. As for reading, in the forms completed in connection with her application for disability benefits Ms. Schoolar listed "reading and filling out paperwork" as activities in her typical day and listed reading as a hobby or interest. R. at 75, 88. Finally, the ALJ was able to assess Ms. Schoolar's speaking ability when she testified in the January 30, 2007 hearing. While the record may lack a comprehensive testing of Ms. Schoolar's language abilities, based on the evidence before him, the ALJ could at least discern between level 2 and the only level that would improve plaintiff's chances of being found disabled, level 1.[1] Therefore, I conclude that the ALJ's conclusion that "[i]n deference to [Ms. Schoolar's] mental impairments, she is restricted to simple work which has a GED level of no more than 2 in reasoning, 2 in math, and 2 in language" is supported by substantial evidence and, as a consequence, is affirmed.

---

[1] The DOT describes level 1 language development as follows: "Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers. Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses. Speaking: Speak simple sentences, using normal word order, and present and past tenses." U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles, Vol. II, Appendix C, Part III.

## III. CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's finding that plaintiff is not disabled under the Act is based on substantial evidence and, therefore, is AFFIRMED.

DATED March 17, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge